WESTFIELD INSURANCE COMPANY, Appellee,

v.

RIEHLE et al., Appellants.

[Cite as *Westfield Ins. Co. v. Riehle* (1996), 113 Ohio App.3d 249.]

Court of Appeals of Ohio,
Sixth District, Williams County.

No. WM–95–026.

Decided Aug. 2, 1996.

*David F. Cooper*, for appellee.

*James D. Godbey* and *George C. Rogers*, for appellants.

*Per Curiam.*

This accelerated appeal is before the court from a judgment of the Williams County Court of Common Pleas which granted summary judgment in favor of plaintiff-appellee, Westfield Insurance Company, in a declaratory judgment action and thereby determined that Westfield did not have a duty to defend or indemnify its insureds, defendants-appellants, Delton Riehle and Riehle Construction Company (collectively, "Riehle" or "appellants"), in a lawsuit filed by defendants, John and Susan Daly. In addition, appellants have filed a motion entitled "Appellants' Submission of Certified Documents not for Inclusion in the Trial Record, but for the Court's Use in Avoidance of Fraud and Request for Sanctions," which we will also address herein. Pursuant to Loc.App.R. 12(B) we hereby transfer this case from the accelerated docket to the regular docket.

The relevant facts of this case are as follows. On October 27, 1994, John and Susan Daly filed a complaint against appellants in which they alleged that they had entered into a contract with appellants for the construction of a home, that appellants agreed and expressly warranted to the Dalys that the home would be built in a workmanlike manner and fit for the Dalys' intended use, and that appellants impliedly warranted that the home would be built in a workmanlike manner, free from defects, and habitable. The Dalys then asserted three causes of action: (1) that appellants breached the contract with the Dalys by failing to build a home of merchantable quality and failing to utilize standard industry practices in building the home, (2) that appellants were negligent in their design and construction of the home and its foundation, and (3) that appellants breached their implied warranties of habitability, failed to construct the home in a workmanlike manner and failed to comply with federal, state and local building codes. The Dalys then alleged that as a direct and proximate result of appellants' breach of contract, negligence and breach of implied warranty, they suffered consequential damages in the amount of $150,000. They further asserted a demand of $100,000 as and for the negligent infliction of emotional distress.

It is not clear from the pleadings in this case when the Dalys and appellants entered into the agreement or when the home was built. Nevertheless, the parties agree that at all times relevant hereto, an insurance policy issued by Westfield and purchased by appellants was in full force and effect. That policy included commercial general liability ("CGL") coverage. The CGL coverage form, which sets forth the terms and conditions of CGL coverage provides under the heading "SECTION I–COVERAGES" as follows:

"COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

"1. Insuring Agreement.

"a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.

" * * *

"b. This insurance applies to 'bodily injury' and 'property damage' only if:

"(1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.' "

The term "occurrence" is defined in Section V, Paragraph 9 as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Moreover, the policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Finally, "property damage" is defined by the policy as:

"a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

"b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the 'occurrence' that caused it."

On May 9, 1995, Westfield filed a declaratory judgment action against appellants and the Dalys in the court below. Specifically, Westfield sought a declaration that under the insurance policy at issue, it had no duty to defend or indemnify appellants with respect to the Dalys' lawsuit. Westfield attached a copy of the insurance policy to its complaint. In their answer, appellants admitted that the copy of the insurance policy attached to the complaint was the policy issued to them by Westfield. Thereafter, Westfield filed a motion for summary judgment. Appellants did not file a responsive brief; however, the lower court did hold a hearing on the motion which both parties attended. On August 28, 1995, the lower court issued a decision and order granting Westfield summary judgment. Specifically, the court determined that all of the Dalys' claims against appellants were "not founded on a claimed 'accident' but, rather, upon a claim of work improperly accomplished, either because of poor workmanship or improper materials." Accordingly, the court determined that there had been no "occurrence" as that term is defined by the policy. In addition, the court determined that, assuming *arguendo* that there had been an "occurrence," several policy exclusions applied. The court therefore held that, given the undisputed facts, reasonable minds could only conclude that appellants were not entitled to coverage under the policy and Westfield was entitled to judgment as a matter of law.

From that judgment, appellants filed a notice of appeal and now raise the following assignment of error:

"The trial court erred in declaring that defendant appellant[s] had no coverage under the Westfield policy for the subject litigation when (1) it failed to note that the declarations pages show that Mr. Riehle had paid premiums for 'products and completed operations' coverage which coverage form was not included or otherwise explained in the certified policy, and (2) it failed to determine that Mr. Riehle had coverage for the subject litigation from his 'products and completed operations' as shown by the definitions in the general liability coverage form which define 'products and completed operations hazard.' "

■ Initially we will address appellants' motion for sanctions and their argument that they in fact purchased "Products–Completed Operations" coverage from Westfield, that Westfield either erroneously or fraudulently provided an incomplete copy of the policy to the court below, which copy failed to include coverage for products and completed operations, and that under that provision appellants are entitled to coverage for the claims made against them by the Dalys.

It is well settled that "[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500, paragraph one of the syllabus. Moreover, through their answer filed in response to the complaint for declaratory judgment, appellants admitted that the copy of the insurance policy attached to the complaint was a true and accurate copy of the policy. During the proceedings below, appellants never challenged the record before the court or asserted that the policy before the court did not accurately reflect the parties' insurance agreement. Accordingly, appellants have waived any argument that the policy does not accurately reflect the agreement of the parties. See *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43, 70 O.O.2d 123, 124, 322 N.E.2d 629, 630–631.

On the issue of sanctions, we note that neither the Appellate Rules nor the Sixth District Local Appellate Rules provide us with the authority to sanction a party for an alleged fraud committed upon an inferior court. Rather, Civ.R. 11 provides:

"The signature of an attorney or pro se party [on a pleading, motion or other paper] constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. * * * For a willful violation of this rule an attorney or pro

se party, upon motion of a party or upon the court's own motion, may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule."

Accordingly, if appellants believe that appellee intentionally filed a fraudulent or erroneous document in the trial court, their form of recourse is to file a motion for sanctions in that court. Their motion for sanctions before this court is therefore denied.

■ In their assignment of error, appellants assert that the trial court erred in granting Westfield's motion for summary judgment. Specifically, appellants argue that the Dalys' complaint did allege an "occurrence" as that term is defined by the policy, and that the declarations page of the policy proves that they purchased products and completed operations coverage, which they assert provided them with liability coverage for the actions alleged in the Dalys' complaint.

In reviewing a ruling on a motion for summary judgment, we must apply the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199–200. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).

As set forth above, the policy at issue covers "property damage" and "bodily injury" caused by "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The test which is generally applied to determine the duty of an insurance company to defend its insured "is the scope of the allegations of the complaint." *Bay Mfg. Co. v. Cincinnati Ins. Co.* (Feb. 5, 1993), Erie App. No. E–92–022, unreported, 1993 WL 24670. Specifically:

"Where the insurer's duty to defend is not apparent from the pleadings in the action against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage had been pleaded, the insurer must accept the defense of the claim." *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 9 OBR 463, 459 N.E.2d 555, syllabus.

The Dalys' complaint alleges that appellants failed to construct their home in a workmanlike manner and that as a result the home is not habitable and the damage is unrepairable. The Dalys further allege that as a result of appellants' breach of contract, negligence and breach of warranties, the Dalys have suffered emotional distress.

In addition to the general statement of coverage set forth above, the policy at issue contains a number of exceptions. Most notably, the policy provides:

"2. Exclusions

"This insurance does not apply to:

" * * *

"j. 'Property damage' to:

" * * *

"(6) That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it.

" * * *

"Paragraph (6) of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard.'

"k. 'Property damage' to 'your product' arising out of it or any part of it.

"l. 'Property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'"

The definitions section of the policy defines "products-completed operations hazard" as "all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work.'" Finally, the definitions section of the policy defines "your work" as "[w]ork or operations performed by you [*i.e.*, appellants] or on your behalf." The term "your work" includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work.'"

This court recently interpreted a substantially similar policy in a case which raised the same issues as have been raised herein. In *GRE Ins. Group v. Internatl. EPDM Rubber Roofing Sys., Inc.* (June 28, 1996), Lucas App. No. L–95–306, unreported, 1996 WL 354812, various parties had sued EPDM for property damage caused by leaks in roofs. This court affirmed the trial court's judgment and concluded that under the unambiguous terms of the policy, GRE was not required to defend or indemnify EPDM in those cases in which complaints alleged damages only for "repair or replacement of the roof," but that in the cases which alleged consequential damages due to the leaks GRE was required to provide coverage. Specifically, we stated:

"Generally, Ohio courts have found that such standard exclusions are intended to insure business risks which are outside of the insured's control, such as accidental injury to persons or property, and not those which are within the control of the insured, such as the risk of not performing well and the risk of causing personal injury and property damage. See *LISN, Inc. v. Commercial*

*Union Ins. Cos.* (1992), 83 Ohio App.3d 625, 629–630 [615 N.E.2d 650, 653–654]; *Zanco v. Michigan Mut. Ins. Co.* (1984), 11 Ohio St.3d 114, 116 [11 OBR 413, 415–416, 464 N.E.2d 513, 514–515]."

We then quoted with approval the following language from *Weedo v. Stone–E–Brick, Inc.* (1979), 81 N.J. 233, 238, 405 A.2d 788, 791, which summarizes the policy underlying the above-stated premise:

" 'The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. The insured * * * may be liable as a matter of contract law to make good on products or work which is defective * * *. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.' " *Id.,* quoting Henderson, Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know (1971), 50 Neb.L.Rev. 415, 441.

■ Upon consideration of the principles set forth herein, and applying those principles to the insurance contract at issue, we conclude that there remains no genuine issue of material fact and when construing the evidence most strongly in favor of appellants, reasonable minds could only conclude that Westfield is entitled to summary judgment as a matter of law. The damages alleged in the Dalys' complaint resulted from the appellants' alleged breach of contract, negligence and breach of warranties in the construction of the home. The Dalys have also asserted a claim for negligent infliction of emotional distress; however, the policy itself limits bodily injury coverage to claims of actual bodily injury, sickness or disease caused by an accident.

Accordingly, the trial court did not err in granting Westfield's motion for summary judgment and the assignment of error is not well taken.

On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Williams County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal as provided in App.R. 24.

*Judgment affirmed.*

HANDWORK, GLASSER and SHERCK, JJ., concur.