SPEARS et al., Appellants,

v.

SMITH, d.b.a. Woodbury Builders, et al., Appellees.

[Cite as *Spears v. Smith* (1996), 117 Ohio App.3d 262.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 15864.

Decided Nov. 29, 1996.

*Andrew M. Engel* and *William H. Dulaney III,* for appellants.

*Gordon D. Arnold* and *Timothy J. Fitzgerald,* for appellees.

BROGAN, Presiding Judge.

Appellants Frank K. and Linda Spears appeal from the Montgomery County Common Pleas Court's judgment entry granting appellees' motion for summary ·judgment.

In their sole assignment of error, the Spearses contend the trial court erred when it reviewed a commercial general liability insurance policy and found no coverage for property damage stemming from a contractor's construction of their home.

Appellee Will R. Smith, d.b.a. Woodbury Builders ("Smith"), contracted to build the Spearses' Centerville, Ohio residence in September 1990. Smith constructed the home's I-beam floor support system personally and utilized subcontractors to complete much of the remaining work. After the home's ·completion, the Spearses noticed "sponginess," depressions, and slanting affecting portions of the floor. As a result of the floor sinking, the home's walls and floor separated in several places. Additionally, wallpaper split, drywall cracked, doorjambs shifted out of alignment, and the home's cabinets separated from the floor.

After discovering these defects, the Spearses filed a complaint against Smith, alleging a breach of contract and negligence. The complaint also included a cause of action against Payless Cashways, Inc., d.b.a. Furrow Building Materials, for negligently furnishing Smith with defective equipment and a claim against Georgia–Pacific for its defective design of the flooring system.

A bankruptcy court subsequently adjudicated Smith bankrupt, however, and the Spearses amended their complaint and sought a declaratory judgment against Smith's insurer, Auto–Owners Mutual Insurance Company ("Auto Owners"). The amended complaint alleged that Smith's insurance policy covered "alterations and repairs and all other curative actions required as a result of Smith's construction of the property." Consequently, the Spearses sought a declaratory judgment that the Auto–Owners policy covered the damages to their home, which allegedly exceeded $42,000.

The Spearses later settled their claim against Georgia–Pacific and dismissed their claim against Payless Cashways, Inc. Thereafter, the appellees filed a motion for summary judgment on the issue of Auto–Owners' insurance coverage for Smith's work and the damage to the Spearses' home. In an April 5, 1996 judgment entry, the trial court found no ambiguity in Smith's Auto–Owners policy and found the damage to the Spearses' home excluded from coverage. Specifically, the trial court declared all damage to the Spearses' home excluded from coverage under the policy's "work product" exclusion. Additionally, the trial court found immaterial a second policy provision stating an exception to a different exclusion. The Spearses subsequently filed a timely notice of appeal advancing one assignment of error.

■ In their lone assignment of error, the Spearses contend that the trial court erred by granting the appellees' motion for summary judgment. Specifically, the Spearses argue that two policy exclusions apply only to Smith's faulty construction of the floor support · system and not resulting damage to the subcontractors' work. The Spearses also contend that an exception to a third exclusion expressly covers the subcontractors' work. These arguments require us to construe provisions 2(j) and 2($l$) of the commercial general liability insurance contract Smith entered into with Auto–Owners. In relevant part, exclusion 2(j) excludes "property damage" to:

"(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or

"(6) That particular part of any property that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it."

The Spearses claim the foregoing language excludes from coverage only Smith's faulty work on their home's flooring. In reaching this conclusion, the Spearses interpret "[t]hat particular part" in paragraphs 5 and 6 as referring only to the flooring support system Smith constructed. They reason that "[n]either of these exclusions relates to claims made for property other than that

upon which the negligent work was performed." In the Spearses' view, the policy excludes Smith's faulty work itself from coverage, but it does cover damages caused by his faulty work. Thus, they contend that Auto–Owners is responsible for damage to those portions of their home adversely affected by Smith's construction of the floor support system.

In support of their argument, the Spearses rely upon *Akers v. Beacon Ins. Co. of Am.* (Aug. 31, 1987), Marion App. No. 9–86–16, unreported, 1987 WL 16260. In *Akers*, the Third District Court of Appeals construed a similar exclusion, concluding that "the policy in question does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident." In other words, the Spearses stress that "[i]t is not the negligent performance of the contract which gives rise to coverage, but rather damage resulting from the negligent performance." The Spearses also cite *Holub Iron & Steel Co. v. Machinery Equip. & Salvage Co.* (July 2, 1986), Summit App. No. 12304, unreported, 1986 WL 7762, in which the Ninth District Court of Appeals similarly reasoned:

"For instance, if a contractor negligently installs a roof which must be removed and replaced, he must bear the cost of removing the faulty roof and installing a new one, but the insurance will pay for any damage allowed or caused to the underlying building or its contents. See *Simons v. Great Southwest Fire Ins. Co.* (E.D.Mo.1983), 569 F.Supp. 1429, affirmed (C.A.8, 1984), 734 F.2d 1318."

In light of *Akers* and *Holub*, the Spearses contend that the trial court erred by finding both Smith's faulty work and the resulting damage to the subcontractors' work excluded from coverage under the policy. In its April 5, 1996 decision and judgment entry, the trial court rejected the Spearses' argument, stating:

"The Plaintiffs contend (in addition to their claim that the policy is ambiguous) that exclusion applies only to that particular part of the work which was performed negligently, in this case the floor support system. Therefore, they claim that the cost to repair the floor is excluded from the coverage, but the damage to the rest of the house caused by the lack of a proper support system is not excluded.

"The Court cannot agree with Plaintiffs' logic. When the exclusion alludes to a particular part of the property the Court fails to discern how one can separate the walls from the floor. The floor is essential and related to every aspect [of] the walls and home. Therefore, any substandard construction of the floor will by association indicate that the walls and composition of the home are inferior. Therefore, the Court concludes that the Plaintiffs cannot isolate the floor from

the walls of the home and maintain that the faulty floor caused damage to the rest of the home, as if there were not a single unit."

After considering the parties' briefs, the record, and relevant legal authorities, we cannot agree with the trial court's judgment. At the outset, we note our disagreement with the trial court's application of exclusion 2(j)(5). As we explained above, that exclusion eliminates coverage for property damage to "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf *are performing operations,* if the property damage arises out of those operations." (Emphasis added.) Significantly, the phrase "are performing operations" is written in the present tense.

Exclusion 2(j)(5), like the other exclusions in Smith's Auto–Owners policy, mirrors the standard form exclusions adopted by the Insurance Services Office ("ISO"), an insurance industry organization that drafts and distributes form policies. One commentator has explained that the intent of ISO exclusion 2(j)(5), which Smith's policy includes verbatim, "is to bar coverage for the work being done by a contractor when claims arise at the time the work is being performed. This bar exists irrespective of whether the claim is being made against the contractor performing the work or the upstream contractor supervising the work." Franco, Insurance Coverage for Faulty Workmanship Claims Under Commercial General Liability Policies (1995), 30 Tort & Ins.L.J. 785, 796. Thus, in unambiguous terms, exclusion 2(j)(5) bars coverage only for damage involving "works in progress." *Id.* at 797.

In the present case, however, the damage caused by Smith's defective work arose after Smith completed the project. Specifically, the damage at issue in the present appeal—the damage to those portions of the home built by subcontractors—did not surface until after the Spearses began residing in their new home. Under these circumstances, we deem exclusion 2(j)(5) inapplicable because "[e]xclusion *j*(5) is written in the present tense, barring coverage for the 'particular part' of real property on which the insured is working at the time of the loss." *Id.*

We turn now to exclusion 2(j)(6), upon which the trial court also relied in its April 5, 1996 decision. As we noted above, exclusion 2(j)(6) excludes from coverage property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." The "Definitions" section of Smith's policy defines "your work" as "[w]ork or operations performed by you or on your behalf" and "[m]aterials, parts or equipment furnished in connection with such work or operations." A sentence

following exclusion 2(j)(6), however, states that the exclusion does not apply "to 'property damage' included in the 'products-completed operations hazard.'"

We find the "completed operations" exception to exclusion 2(j)(6) applicable in the present case. Smith's Auto–Owners policy defines the "products-completed operations hazard" as including "all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except: (1) Products that are still in your physical possession; or (2) Work that has not yet been completed or abandoned." In our view, Smith's damage to the subcontractors' work fulfills this definition. The damage occurred at a home construction site away from any premises Smith owned or rented. Furthermore, the damage arose out of his work on the floor support system. Finally, the Spearses' home had been completed and no longer was in Smith's possession when the damage occurred.

As we noted above, Smith's Auto–Owners policy states that exclusion 2(j)(6) "does not apply to 'property damage' included in the 'products-completed operations hazard.'" Therefore, exclusion 2(j)(6) does not exclude from coverage the damage done to the subcontractors' work.

■ Having determined that neither exclusion 2(j)(5) nor exclusion 2(j)(6) excludes from coverage the damage Smith's faulty work caused to the subcontractors' work, we turn now to exclusion 2($l$). Unlike exclusion 2(j)(6), exclusion 2($l$) "is the exclusion that addresses coverage for property damage to completed work performed by or on behalf of the named insured." Franco, *supra*, at 798, quoting Casualty & Surety, FC & S Bulletins (National Underwriter), Sept. 1993, at Aa–15. Exclusion 2($l$) excludes from coverage "'[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'"[1]

"This exclusion is intended to apply only to work within the product-completed operations hazard. Exclusion $l$ has no bearing on works in progress." Franco, *supra*, at 799. On its face, then, exclusion 2($l$) in Smith's insurance policy arguably appears to exclude from coverage the damage to his subcontractors'

---

1. Exclusion ($l$) in Smith's Auto–Owners policy appears to contain a typographical error. The standard form ISO exclusion ($l$) contains the language we cited above. Similarly, the various cases and reference materials this court consulted all recite exclusion ($l$) verbatim as we have stated it above. Exclusion ($l$) in Smith's policy, however, excludes from coverage "'[p]roperty damage' to 'your work' arising out of it or any part of it *and including in* the 'products-completed operations hazard.'" As written in Smith's policy, the phrase "and including in" makes little grammatical sense. Clearly, the phrase was intended to read "and included in." Consequently, this court will interpret the phrase as it was intended to be written and in a way that provides it with meaning.

work. Significantly, however, the exclusion in Smith's policy also contains an exception. The exclusion "does not apply if the damaged work or the work out of which the damage arises was performed on [the insured's] behalf by a subcontractor."

In the present case, the work "out of which the damage arose" was Smith's. The "damaged work" at issue, however, was performed by Smith's subcontractors. Therefore, the exception to exclusion 2(*l* ) applies. As a result, by its unambiguous terms exclusion 2(*l* ) does not eliminate coverage for the harm done to the subcontractors' work.

Having found no exclusion denying coverage for the damage Smith's faulty work caused to the remainder of the Spearses' home, we hold that the trial court erred by granting summary judgment for the appellees. For the foregoing reasons, we find the damage to the subcontractors' work covered by Smith's Auto–Owners insurance policy. Furthermore, having found the trial court's judgment incorrect for the reasons explained above, we need not address the Spearses' additional argument that certain affidavits created a genuine issue of material fact and precluded summary judgment. Likewise, we need not address their argument that the phase "particular part" is ambiguous, rendering summary judgment inappropriate.

In light of the foregoing analysis, we reverse the trial court's judgment and remand this cause for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

FAIN and FREDERICK N. YOUNG, JJ., concur.