OPINION
The plaintiff, Erie Insurance Exchange, commenced this action in the Court of Common Pleas of Miami County pursuant to R.C.2721.04 seeking a declaration as to which of two insurance companies should pay for a loss incurred while construction work was being performed at the home of Deborah Rimkus of Troy, Ohio.
At the time of the loss, Rick Pugh, a contractor, doing business as Pugh Construction, was working on a new addition and basement renovation at the home of Ms. Rimkus. Rimkus was insured by the defendant, Cincinnati Companies, and Pugh carried a contractor's general liability insurance policy with Erie Insurance Exchange.
Subsequently, the Rimkus house collapsed into the basement while Pugh was working on it, and her insurer, Cincinnati Companies, paid Ms. Rimkus for the damages to her home, its contents, the room addition, temporary living expenses, and the costs for demolition and hauling of debris.
Thereafter, the trial court entered a judgment against Pugh upon the issue of liability, and after Pugh and Cincinnati Companies entered into a stipulation as to the amount of damages caused by the collapse of the house, Erie Insurance filed the present declaratory judgment action seeking a determination that its policy exclusions applied to the losses sustained by Rimkus.
The cause was presented to the Common Pleas Court upon the stipulations, memorandums, depositions, and oral arguments of the parties, and on October 28, 1998, the trial court entered its judgment finding that the exclusion provisions of the Erie policy applied to the main residence, the contents, the living expenses and the debris removal, but that such provisions did not apply to the required destruction of the new room additions to the main house.
In the trial court, the parties stipulated that the collapse of the house was an "occurrence" as defined in the Erie policy, and the policy otherwise provides coverage for the damages incurred by Ms. Rimkus unless one of three specific exclusions in the insurance contract preclude coverage under the facts and circumstances of this case. Those exclusions, as set forth in the policy, provide as follows:
 (1) That particular part of real property upon which operations are being performed by you or any contractor or subcontractor working directly or indirectly on your behalf, if the property damage arises out of those operations. (P. 19).
 (2) That particular part of any property that must be restored, repaired or replaced because your work was faulty. We will cover property damage included in the products hazard and completed operations hazard.
(P. 19).
 (3) Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, removal or disposal of: (a) your product; (b) your work; or (c) impaired property. (P. 20).
In its appeal to this court, Cincinnati Companies has set forth four assignments of error, the first of which has been stated as follows:
 (1) THE TRIAL COURT ERRED WHEN IT HELD THAT THE TOTAL DESTRUCTION OF DEBORAH RIMKUS 100 YEAR OLD HOUSE WAS EXCLUDED FROM LIABILITY COVERAGE BY THE EXCLUSIONARY LANGUAGE "THAT PARTICULAR PART OF REAL PROPERTY UPON WHICH OPERATIONS ARE BEING PERFORMED BY YOU OR ANY CONTRACTOR OR SUBCONTRACTOR WORKING DIRECTLY OR INDIRECTLY ON YOUR BEHALF, IF THE PROPERTY DAMAGE ARISES OUT OF THOSE OPERATIONS.
At the outset, we note that both the appellant and the appellee rely to some extent upon the case of Spears v. Smith
(1996), 117 Ohio App.3d 262, but that case has no more than peripheral application to the facts of the present case. In fact, the principal thrust of the Spears case was based upon the conclusion that the exclusionary provision barred coverage only for damage to works in progress. Here, however, it is uncontroverted that Pugh's employee was working on the basement foundation when a weakened control support gave way and the main residence collapsed into the basement. In this regard, the report of Daniel Halter, a structural engineer, specifically states that the collapse of the residence was the "direct result of undermining all footers on the foundation walls without proper shoring of the residence and the footers."
Since "that particular part of real property upon which operations are being performed" involved the foundation which supported the entire residence, and since such operations set off the reaction which caused all of the subsequent damage, the appellant's argument must give way to the exclusionary language of Erie's policy. Indeed, the isolation of the foundation as the only place where faulty operations were being performed when the house fell down, and the assessment of damages accordingly, could lead to completely illogical results. Accordingly, the first assignment of error is overruled.
The second, third, and fourth assignments of error have been stated by the appellant as follows:
 (2) THE TRIAL COURT ERRED WHEN IT HELD THAT ALL DEBORAH RIMKUS' POSSESSIONS CONTAINED IN HER HOME WERE EXCLUDED FROM LIABILITY COVERAGE BY THE EXCLUSIONARY LANGUAGE: DAMAGES CLAIMED FOR ANY LOSS, COST, OR EXPENSE INCURRED BY YOU OR OTHERS FOR THE LOSS OF USE, WITHDRAWAL, INSPECTION, REPLACEMENT, RECALL, REPAIR, ADJUSTMENT, REMOVAL OR DISPOSAL OF: (A) YOUR PRODUCT; (B) YOUR WORK; OR (C) IMPAIRED PROPERTY.
 (3) THE TRIAL COURT ERRED WHEN IT HELD THAT EXPENSES INCURRED BY DEBORAH RIMKUS FOR TEMPORARY LIVING QUARTERS UNTIL A REPLACEMENT HOME COULD BE BUILT WERE EXCLUDED FROM LIABILITY COVERAGE BY THE EXCLUSIONARY LANGUAGE: DAMAGES CLAIMED FOR ANY LOSS, COST OR EXPENSE INCURRED BY YOU OR OTHERS FOR THE LOSS OF USE, WITHDRAWAL, INSPECTION, REPLACEMENT, RECALL, REPAIR, ADJUSTMENT, REMOVAL, OR DISPOSAL OF: (A) YOUR PRODUCT; (B) YOUR WORK; OR (C) IMPAIRED PROPERTY.
 (4) THE TRIAL COURT ERRED WHEN IT HELD THAT THE DEMOLITION AND HAULING OF DEBRIS FROM DEBORAH RIMKUS' 100 YEAR OLD HOME AND ALL OF HER WORLDLY POSSESSIONS, WERE EXCLUDED FROM LIABILITY COVERAGE UNDER THE EXCLUSIONARY LANGUAGE: DAMAGES CLAIMED FOR ANY LOSS, COST, OR EXPENSE INCURRED BY YOU OR OTHERS FOR THE LOSS OF USE, WITHDRAWAL, INSPECTION, REPLACEMENT, RECALL, REPAIR, ADJUSTMENT, REMOVAL, OR DISPOSAL OF: (A) YOUR PRODUCT; (B) YOUR WORK; OR (C) IMPAIRED PROPERTY.
At the time of oral argument, the appellant indicated that each of the alleged errors presented an independent issue, but within the context of the three exclusionary provisions relied upon by the trial court, the assigned errors undoubtedly stem from a common source — the faulty work of Pugh Construction.
According to the stipulated facts, the contents of the Rimkus home were destroyed or rendered irretrievable by the collapse which was caused by Pugh's work on the house, and impaired property embraces any tangible property which incorporates the contractor's work. Here, the loss of the contents was directly traceable to the collapse of the residence, and the collapse of the residence was directly related to Pugh's faulty work. Thus, the stipulated facts bring the loss of the contents within the policy provisions relied upon by Erie.
Likewise, the expenses incurred from the loss of use of the property, and the costs of removal of the debris flowed naturally from the initial collapse of the residence, and within the reasonable contemplation of the contracting parties, such damages necessarily must have originated at the workplace. Thus, the payments for living expenses and debris removal appear to fit comfortably, if not squarely, within the exclusionary coverage. Accordingly, the second, third, and fourth assignments of error are overruled.
In conjunction with the appeal of Cincinnati Companies, the appellee, Erie Insurance Exchange, has filed a cross-appeal claiming, for its only assignment of error, as follows:
 THE TRIAL COURT ERRED IN DETERMINING THAT COVERAGE EXISTED FOR THE NEW ROOM ADDITION.
According to the facts, the partially completed new room addition was torn down after the collapse of the main residence because it had no value standing alone. And since the destruction of the addition was intentional, and since Pugh was not working on that particular part of the real property when the collapse occurred, the trial court held that the exclusionary provisions of Erie's policy do not control.
At first glance, the damages from the destruction of the new addition would appear to fall in the same category as the damages resulting from the collapse of the main house, but the language of the Erie policy lends substantial support to the factual determination of the trial court that the single-unit analysis adopted in the appellant's appeal does not apply to the new addition. In the first place, the faulty work on the foundation of the main house had no effect upon the new construction, and secondly, no damage to the addition ensued while Pugh's work was in progress. Furthermore, the damages emanating from the decision to tear down and remove the new addition some time after the calamity at the main residence are readily severable from the damages that routinely followed the collapse. Hence, the appellee's assigned error is overruled.
Finding no prejudicial error in the record, the judgment of the Common Pleas Court will be affirmed.
BROGAN, J., and FAIN, J., concur.
(Hon. Joseph D. Kerns, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
Gordon D. Arnold
James D. Utrecht
Christopher D. Clark
Hon. Robert J. Lindeman