OPINION
The present appeal arises from the decision of the Columbiana County Court of Common Pleas wherein summary judgment was granted in favor of State Automobile Mutual Insurance Company on the grounds that it had no duty to defend or pay attorney fees. For the reasons set forth below, the decision of the trial court is affirmed.
 I. FACTS
On February 15, 1990, Camp Frederick, Inc. retained D G Enterprises, Inc. ("appellant") for the purpose of renovating a swimming pool which was located on Camp Frederick's premises. Pursuant to the terms of the contract, appellant was to fully complete its services by June 17, 1990 so that the pool would be available for Camp Frederick's summer programs. Once the renovations had been completed, personnel from Camp Frederick notified appellant that it did not believe the project had been completed in a competent and workmanlike manner as was called for in the parties' contract. When the defects were not corrected to Camp Frederick's satisfaction, the decision was made to seek legal recourse.
A complaint was filed by Camp Frederick against appellant in the Columbiana County Court of Common Pleas on August 22, 1997. The relevant causes of action in said complaint related to alleged breaches of contract and a breach of warranty. Following the completion of various preliminary matters, the decision was made by appellant to file a third party complaint against State Automobile Mutual Insurance Company ("appellee"). The basis for this decision was that at all times relevant herein, appellant maintained a Preferred Business Policy of insurance through appellee. Therefore, appellant sought relief from the court in the form of declaratory judgment indicating that appellee had the duty to defend and indemnify in the underlying action filed by Camp Frederick.
Based upon this third-party complaint, appellant filed a motion for partial summary judgment requesting the trial court to hold that appellee owed a duty to both defend and indemnify as a result of the terms of the contract of insurance. Appellee responded with a summary judgment motion of its own arguing that the applicable provisions of the policy were not triggered and thus, no duty to defend or indemnify arose. Upon reviewing the motions, the trial court determined that none of the claims alleged in the original complaint gave rise to a duty to defend under the Preferred Business Policy. Therefore, as a matter of law appellee was dismissed as a party to the proceedings. It is from this judgment entry that appellant filed a timely notice of appeal on November 25, 1998.[1]
Appellant raises a single assignment of error on appeal.
 II. ASSIGNMENT OF ERROR
Appellant's sole assignment of error reads:
 "ON CROSS MOTIONS FOR SUMMARY JUDGMENT, THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION AND DENYING APPELLANT'S MOTION."
Under this assignment, appellant alleges that a duty to defend arose due to the fact that the policy coverage included damages incurred as a result of "bodily injury" or "property damage." Inasmuch as Camp Frederick's complaint alleged that appellant rendered the pool unusable, appellant argues that such injuries are encompassed by the policy's definition of "property damage." Therefore, the causes of action set forth in the original complaint arguably fall within the coverage provided by the Preferred Business Policy and thus, appellee owed a duty to defend against the complaint. In light of this reasoning, appellant asserts that the trial court should have granted summary judgment in its favor and required appellee to both defend and indemnify as related to the allegations raised by Camp Frederick.
 A. STANDARD OF REVIEW
In considering a motion for summary judgment, Civ.R. 56(C) controls and provides that before such a motion may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State exrel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511. Additionally, the party moving for summary judgment has the responsibility of clearly showing an entitlement to the granting of its motion:
 "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293.
Due to the fact that summary judgment is designed to cut short the litigation process, trial courts should award such with caution, resolving doubts and construing evidence in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356,360. In that a grant of summary judgment disposes of a case as a matter of law, this court's analysis on appeal is conducted under a de novo standard of review. Grafton v. Ohio Edison Co.
(1996), 77 Ohio St.3d 102, 105.
Furthermore, if a contract of insurance is clear and unambiguous, the issue of coverage pursuant to the policy language is appropriately resolvable upon summary judgment as a matter of law. Inland Refuse Transfer Co. v. Browning FerrisIndustries of Ohio, Inc. (1984), 15 Ohio St.3d 321, 322. Hence, a trial court's decision on such a matter is subject to de novo
review on appeal. Nationwide Mut. Fire Ins. Co. v. Guman Bros.Farm (1995). 73 Ohio St.3d 107, 108.
 B. APPLICABLE LAW
This court recently discussed the law which applies when deciding whether an insurance company has a duty to defend when we decided Jones v. The Cincinnati Ins. Co. (June 21, 1999), Mahoning App. No. 96-CA-43, unreported. In Jones we recognized the well-settled principle that an insurance company has a duty to defend an insured against an action if the complaint alleges conduct which falls within the scope of coverage of the applicable policy. Id. at 10 citing Motorists Mut. Ins. Co. v.Trainor (1973), 33 Ohio St.2d 41. Furthermore, we explained that an insurer's duty to defend also extends to those instances in which allegations within the complaint state a claim which mayarguably or potentially be within policy coverage or where there remains some doubt as to whether a theory of recovery falls within the scope of coverage. Id. citing Willoughby Hills v.Cincinnati Ins. Co. (1984), 9 Ohio St.3d 177, 180. This duty to defend exists even though the underlying action may eventually produce a result which in fact does not trigger a duty to indemnify under the policy. Preferred Mut. Ins. Co. v. Thompson
(1986), 23 Ohio St.3d 78, 80.
While this authority demonstrates that an insurer's duty to defend is quite broad, it nonetheless is not all encompassing. As this court previously noted in Westfield Ins. Co. v. JarrettReclamation Serv., Inc. (1996), 114 Ohio App.3d 492, the duty to defend does not extend to those instances in which "the complaint contains no allegation that states a claim potentially or arguably within the policy coverage." Id. at 499. An insurer's duty to defend will be held to have been absolved if it is determined that there is no possibility of coverage under the policy as related to the allegations in the complaint. WedgeProducts, Inc. v. Hartford Equity Sales Co. (1987), 31 Ohio St.3d 65,67-68. Similarly, if allegations in a complaint raise claims which are excluded under the policies of insurance, the duty to defend is extinguished. W. Lyman Case Co. v. National CityCorp. (1996), 76 Ohio St.3d 345, 349 citing Zanco. Inc. v.Michigan Mut. Ins. Co. (1984), 11 Ohio St.3d 114. An insurance company has no obligation to its insured unless the conduct at issue falls within the scope of coverage. Gearing v. NationwideIns. Co. (1996), 76 Ohio St.3d 34, 36.
 C. ANALYSIS
The insurance policy relevant to the case at bar provides as follows in regards to the issue of coverage:
"SECTION I — COVERAGES
 COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE
 Insuring Agreement
 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage' to which this insurance applies. We will have the right and duty to defend any `suit' seeking those damages. * * *."
"Property damage" is defined by the policy as follows:
 "a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
 b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the `occurrence' that caused it."
In contrast to the general grant of coverage provided under the Insuring Agreement portion of the policy, a number of exclusions are set forth which serve to limit appellee's exposure. The exclusionary language relevant to the present case states as follows:
"2. Exclusions.
This insurance does not apply to:
* * *
j. `Property damage' to:
* * *
 (6) That particular part of any property that must be restored, repaired or replaced because `your work' was incorrectly performed on it."
The policy further provides an exception to the exclusion provided under 2(j)(6). The policy specifically states that "[p]aragraph (6) of this exclusion does not apply to `property damage' included in the "products-completed operations hazard.'" A definition of the term "products-completed operations hazard" is provided in the policy as follows
 "`Products-completed operations hazard' includes * * * `property damage' occurring away from premises you own or rent and arising out of `your product' or `your work' except:
 (1) Products that are still in your physical possession; or
 (2) Work that has not yet been completed or abandoned."
Based upon the coverage, exclusions and exception to the exclusions as defined in the policy, it cannot be held that appellee owed appellant a duty to defend against the actions alleged by Camp Frederick. An examination of the causes of action as alleged in Camp Frederick's complaint reveals that none of said actions even arguably give rise to coverage under the Preferred Business Policy. Throughout the complaint, Camp Frederick makes repeated allegations that appellant failed to renovate the swimming pool in a workmanlike manner as required by the original contract and as a result, the pool was not in a useable condition.
While the claim that the pool is no longer in a useable condition could arguably fall within the scope of coverage in light of the definition provided for "property damage," any potential for coverage is eliminated pursuant to the exclusionary language provided under section 2(j)(6) of the policy. Pursuant to this section, appellee excludes coverage for any repairs which become necessary due to the fact that the insured's work was incorrectly performed. Camp Frederick's claims fall squarely within this exclusionary language and are therefore, beyond the scope of coverage. According to Camp Frederick's allegations in its complaint, the very reason that the pool is no longer useable is because appellant's work was not done in a workmanlike manner. Such claims are synonymous with appellant having incorrectly performed the requested renovations.
Although appellant argues that the exception to the exclusion should operate to permit recovery under the policy, this position similarly must fail. According to the exception to the exclusion, property damage which arises as a result of the insured's work or product may nevertheless fall within the scope of coverage if the work is no longer in the insured's possession and has in fact been completed. Appellant believes that since the renovations had been completed, even if improperly performed, the work had been done and it was no longer in possession of the swimming pool Therefore, the "products-completed operations hazard" exception to the exclusionary language is argued to apply.
However, a number of courts, including this court, have analyzed similar products-completed operations hazard language. Pursuant to these cases, it is clear that the exception as provided in the present policy is not meant to permit coverage under the policy. As this court noted in Cole v. AmericanIndustries and Resources Corp. (1998), 128 Ohio App.3d 546, products-completed operations hazard provisions are designed to provide coverage for "liability arising after the product or work of an insured has been completed." (Emphasis added). Id. at 552. The Second District provided further insight into this type of provision when it reasoned that "[i]t is not the negligent performance of the contract which gives rise to coverage, but rather damage resulting from the negligent performance." Spearsv. Smith (1996), 117 Ohio App.3d 262, 265. In the event the damage in question arose after the work had been completed, coverage would apply pursuant to a products-completed operations hazard provision. Id. at 266. This type of exception clearly permits coverage for tort liability for physical damage to others but not for contractual liability of an insured who fails to produce work which is satisfactory to its customer. WestfieldIns. Co. v. Riehle (1996), 113 Ohio App.3d 249, 255.
Due to the very nature of a products-completed operations hazard exception, appellant is unable to utilize such under the present circumstances in order to establish coverage. The damages which are alleged by Camp Frederick in its complaint are purely contractual in nature which arise as a result of appellant's failure to perform the renovations in a workmanlike manner. In the case at bar, the damages which are at issue are those created by appellant because of incorrectly performed work. Noticeably absent from Camp Frederick's allegations are any claims for damages which arose at some point in time after the work had been completed on the swimming pool. The policy of insurance as it was drafted was never intended to insure the quality of appellant's work and to permit such coverage would be to impermissibly expand the nature of the coverage which was purchased. Cole, supra at 555 citing Zanco, supra. Since the exclusion under 2(j)(6) specifically applies to the actions in question and no provision of the policy acts to revive coverage, it must be held that the trial court properly determined that appellee had no duty to defend as related to the allegations set forth by Camp Frederick.W. Lyman Case Co. and Zanco, supra.
While appellant raises a second issue for review under its single assignment of error, such is rendered moot by our determination herein. Having not successfully prosecuted the declaratory judgment action, the insured cannot be entitled to recover the costs of the prosecution. Therefore, appellant's assignment of error lacks merit.
For the foregoing reasons, the decision of the trial court is hereby affirmed.
Donofrio, J., concurs.
Waite, J., concurs.
APPROVED:
 _________________________ JOSEPH J, VUKOVICH, JUDGE
[1] It should be noted that the trial court entered an amended judgment entry on December 17, 1998 reflecting that its earlier decision was a final and appealable order. Appellant filed a second notice of appeal from the amended entry on January 13, 1999. Both causes of action have been consolidated for purposes of judicial economy.