OPINION.
{¶ 1} Defendants-appellants, OMG Group and OMG Americas, Inc. ("OMG"), appeal the summary judgment granted in favor of plaintiff-appellee, The Home Insurance Company of Illinois, and defendants-appellees, American Empire Surplus Lines Insurance Company, Associated International Insurance Company, Columbia Casualty Corporation, National Union Fire Insurance Company of Pittsburgh, Pennsylvania, Northfield Insurance Company, and Steadfast Insurance Company, in a declaratory-judgment action. For the following reasons, we affirm the trial court's judgment.
 {¶ 2} For a number of years, OMG manufactured a product known as M-Gard, a wood preservative that was applied to utility poles to retard decay. OMG sold M-Gard to several companies that applied it with a pressure-treatment process.
 {¶ 3} Many utility companies throughout the country purchased the poles treated with M-Gard. In the early 1990s, some of the utility companies discovered that the poles treated with M-Gard had prematurely decayed. This premature decay led to numerous lawsuits against OMG both by the utilities and by the companies that had used M-Gard to treat the poles.
 {¶ 4} In 1996, Home Insurance filed a complaint for declaratory judgment, seeking a declaration of its rights and duties with respect to the lawsuits under an insurance policy purchased by OMG. In addition to OMG, the other insurance companies that had contracted with OMG for liability coverage were named as defendants. OMG filed counterclaims seeking a declaration that the policies covered the claims. Each of the parties filed a motion for summary judgment, and the trial court granted the motions in favor of the insurance companies. In turn, the court denied OMG's motion for summary judgment.
 {¶ 5} In its first and second assignments of error, OMG now argues that the trial court erred in failing to construe the evidence most strongly in its favor and in saddling OMG with the burden of proving the applicability of policy exclusions. We find no merit in these assignments of error. Even were we to conclude that the trial court had erred, the fact that this court reviews the granting of summary judgment de novo renders any error on the part of the trial court harmless.[1] The first and second assignments of error are accordingly overruled.
 {¶ 6} In its third assignment of error, OMG argues that the trial court erred in granting summary judgment in favor of the insurance companies. OMG first argues that the court erred in finding that there had been no "property damage" within the meaning of the insurance policies, and, therefore, no entitlement to coverage.
 {¶ 7} Pursuant to Civ.R. 56(C), a motion for summary judgment is to be granted only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and, with the evidence construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party.[2]
The party moving for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists, and once it has satisfied its burden, the nonmoving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial.[3]
 {¶ 8} The party seeking to recover under an insurance policy generally bears the burden of demonstrating coverage under the policy as well as proving a loss.[4] But where an insurer denies liability coverage based upon a policy exclusion, the insurer bears the burden of demonstrating the applicability of the exclusion.[5]
 {¶ 9} In the case at bar, the policies provided for coverage due to "property damage" arising from the use of a product such as M-Gard. The policies defined "property damage" as "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period." The term "occurrence" was defined in the policies as "[a]n accident that takes place during the period of coverage provided by the policy, including continuous or repeated exposure to substantially the same general harmful conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the named insured or the victim thereof." The policies also contained an exclusion from coverage for "loss of use of tangible personal property which has not been physically injured or destroyed resulting from * * * the failure of the named insured's products * * * to meet the level of performance, quality, fitness, or durability warranted or represented by the named insured."
 {¶ 10} We find no error in the trial court's holding that OMG had failed to demonstrate the existence of "property damage." The claims of the third parties did not allege that M-Gard had caused "physical injury to or destruction of tangible property" under the policy language. As the trial court aptly noted, the gravamen of the complaints was that M-Gard had failed to adequately protect the utility poles from decay caused by exposure to natural elements. And while OMG argues that certain claims involved damage to property other than the poles themselves,[6] the basis of all the claims was that M-Gard had simply failed as a preservative. Absent any allegation that M-Gard had caused physical injury to property, there was no coverage under the first prong of the "property damage" clause in the policies.
 {¶ 11} OMG also argues, though, that the trial court erred in holding that M-Gard had not caused the "loss of use of tangible property which has not been physically injured or destroyed." In arguing that there was a loss of use of the utility poles, OMG relies heavily on a federal decision, Hartzell Industries, Inc. v. Federal Ins. Co.[7] InHartzell, a manufacturer had supplied replacement blades for an industrial fan, and the blades had broken and fallen from the fan.[8]
The court found coverage for the loss of use of the boiler room where the fan was located, under policy language substantially similar to that in the instant case.[9] In finding coverage, the court emphasized that the breaking of the fan blades constituted a "catastrophic failure" of the product and was an "accident" within the meaning of the policy's definition of the term "occurrence."[10]
 {¶ 12} We find the case at bar to be distinguishable fromHartzell. While the fan in Hartzell experienced a "catastrophic failure," the poles in the instant case gradually disintegrated as a result of exposure to the elements. Under these circumstances, OMG failed to demonstrate that there was an occurrence within the meaning of the policies' language. Moreover, as we have already noted, the presence of M-Gard did not cause the deterioration of the poles and the product did not itself present a "harmful condition" under the policies' definition of occurrence. The product simply failed to preserve the poles from natural deterioration. In view of this, the trial court properly held, as a matter of law, that there was no coverage under the second part of the policies' "property damage" definition.
 {¶ 13} Also, it is settled that, in commercial general liability insurance, "[t]he risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself. * * * The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained."[11] As the Hartzell court noted, had the fan in that case simply failed to work as warranted, and had it not "suddenly and accidentally disintegrated," an exclusion similar to the clause in the instant case would have precluded coverage.[12]
 {¶ 14} Here, the loss of use of the utility poles was due to the alleged failure of M-Gard to preserve the poles as OMG had warranted. Although OMG may have been contractually liable for the losses asserted by the utility companies,[13] the coverage under the policies did not extend to such liability. Based upon the authority already cited, there was no coverage for the asserted loss. The third assignment of error is overruled.
 {¶ 15} In the fourth assignment of error, OMG argues that the trial court erred in calculating the number of occurrences in determining coverage limitations. Having held that there was no coverage under the policies, in part because there were no alleged "occurrences" under the policies' language, we hold that the fourth assignment of error is moot.
 {¶ 16} In its fifth and final assignment of error, OMG argues that the trial court erred in holding that Associated had no duty to defend the claims. An insurer's duty to defend is distinct from its duty to indemnify,[14] and the duty to defend may arise even where the insurer ultimately has no duty to provide coverage.[15] The duty to defend arises "where the pleadings unequivocally bring the action within the coverage afforded by the policy."[16] If the duty to defend is not apparent from the pleadings, it arises when the "allegations do state a claim which is potentially or arguably within the policy coverage, or [when] there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded."[17]
 {¶ 17} In the case at bar, we find no error in the trial court's holding that there was no duty to defend. As is evident from our discussion of the third assignment of error, there were multiple, clearly apparent grounds upon which Associated could have relied in asserting that the claims were not covered under the OMG policy. Those grounds included the lack of "property damage" within the meaning of the policies, the absence of any "occurrence" alleged in the claims, and the contractual nature of the claims asserted by the third parties. Under these circumstances, the trial court properly concluded that there was no arguable claim for coverage under the policies and, therefore, no duty to defend. The fifth assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
Doan, P.J., and Painter, J., concur.
[1] See National City Bank v. Williams (May 19, 1998), 10th Dist. No. 97APG09-1271.
[2] See State ex rel. Howard v. Ferreri, 70 Ohio St.3d 587, 589,1994-Ohio-130, 639 N.E.2d 1189.
[3] See Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107,662 N.E.2d 264.
[4] See Chicago Title Ins. Co. v. Huntington Natl. Bank,87 Ohio St.3d 270, 273, 1999-Ohio-62, 719 N.E.2d 955.
[5] See Continental Ins. Co. v. Louis Marx Co. (1980),64 Ohio St.2d 399, 415 N.E.2d 315, syllabus.
[6] OMG cites damages arising from the falling of transformers from the utility poles and from the poles themselves falling.
[7] (2001), 168 F. Supp.2d 789.
[8] Id. at 796.
[9] Id. at 795.
[10] Id. at 796.
[11] Westfield Ins. Co. v. Riehle (1996), 113 Ohio App.3d 249, 255,680 N.E.2d 1025, quoting Weedo v. Stone-E-Brick, Inc. (1979), 81 N.J. 233,238, 405 A.2d 788. Of course, the claims by parties that had allegedly been damaged by falling transformers and poles were distinct from the loss-of-use claims. But as we have already held, the failure of OMG to demonstrate that M-Gard had caused "physical injury to or destruction of tangible property" within the meaning of the policies precluded coverage for the former claims as well.
[12] Hartzell, supra, at fn. 20.
[13] See Riehle, supra, at 255, 680 N.E.2d 1025.
[14] See W. Lyman Case Co. v. Natl. City Corp., 76 Ohio St.3d 345,347, 1996-Ohio-392, 667 N.E.2d 978.
[15] See Air Products Chemicals, Inc. v. Indiana Ins. Co. (Dec. 23, 1999), 1st Dist. Nos. C-980947 and C-990009.
[16] Willoughby Hills v. Cincinnati Ins. Co. (1984), 9 Ohio St.3d 177,180, 459 N.E.2d 555.
[17] Id.