DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Stella Moga has appealed from the judgment of the Lorain County Court of Common Pleas that granted summary judgment to Plaintiff-Appellee Westfield Insurance Company ("Westfield"). This Court affirms.
 I {¶ 2} On November 14, 2003, Westfield filed a complaint in the Lorain County Court of Common Pleas requesting a declaratory judgment that its policy, issued to Coastal Group, Inc. ("Coastal") did not provide coverage on a claim filed by Appellant against Coastal based on Coastal's defective workmanship and its subsequent delay in rectifying the deficiencies. On December 22, 2003, Appellant filed an answer to Westfield's complaint and also filed a counterclaim requesting a declaratory judgment that the insurance policy did provide coverage for her claim against Coastal.
 {¶ 3} On October 22, 2004 Westfield filed a motion for summary judgment with exhibits. Appellant filed a brief in opposition on December 7, 2004. On January 20, 2005, the trial court granted summary judgment in favor of Westfield, finding that Appellant's claims did not constitute an occurrence as defined in the Westfield policy. Appellant has appealed the decision of the trial court, asserting one assignment of error.
 II Assignment of Error Number One
"THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT, STELLA MOGA BY GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE, WESTFIELD INSURANCE COMPANY, WHEN THE APPELLEE'S INSURANCE POLICY NUMBER CWP 3677722 ISSUED TO DEFENDANT COASTAL GROUP, INC. APPLIED TO A CLAIM FILED THEREUNDER BY APPELLANT, STELLA MOGA AGAINST DEFENDANT COASTAL GROUP, INC."
 {¶ 4} In her sole assignment of error, Appellant has argued that the trial court erred in granting Westfield's motion for summary judgment and in declaring that the policy did not apply to Appellant's delay claims against Coastal. Specifically, Appellant has argued that Coastal's sub par workmanship and delay caused an "accident" under the policy's definition of "occurrence" resulting in loss of use of her property and substantial economic loss. We disagree.
 {¶ 5} An appellate court reviews an award of summary judgment de novo. Valley Forge Ins. Co. v. Premier Recyclers Plastics,Inc., 9th Dist. No. 22633, 2005-Ohio-6317, at ¶ 6, citingGrafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. This Court applies the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party.Viock v. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12, certiorari denied (1986), 479 U.S. 948, 107 S.Ct. 433,93 L.Ed.2d 383. Pursuant to Civ.R.56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 6} The party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate an absence of a genuine issue of material fact as to some essential element of the non-moving party's claim. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 292. To support the motion, such evidence must be present in the record and of the type listed in Civ.R. 56(C). Id. Once the moving party's burden has been satisfied, the non-moving party must meet its burden as set forth in Civ.R. 56(E). Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material to demonstrate a genuine dispute over the material facts. Id. See, also, Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735. Pursuant to Civ.R. 56(C):
"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
 {¶ 7} Initially, we must determine whether the claims made by Appellant constitute "property damages" arising from an "occurrence" as defined by the Commercial General Liability ("CGL") policy. The Insuring Agreement for Bodily Injury and Property Damage Liability in the CGL policy at issue states: "We will pay those sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage' to which this insurance applies."
 {¶ 8} The CGL policy defines "property damage" as "loss of use of tangible property that is not physically injured." Furthermore, the CGL policy applies to "bodily injury" and "property damage" only if the "bodily injury" or "property damage" is caused by an "occurrence." The CGL policy defines an "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."
 {¶ 9} We begin the analysis by noting that Appellant's claim of damages from loss of use due to Coastal's negligent delay does qualify as "property damage" as defined by the CGL policy. However, we cannot agree that the claims made by Appellant constitute an "occurrence." Appellant has repeatedly asserted that Coastal's delay in rectifying deficiencies in the construction resulted in substantial economic loss. After a review of the record, it is clear that Appellant's underlying claim is for the economic losses sustained due to Coastal's delay in remedying deficiencies in its work. However, delay is a risk inherent in construction contracts, not an "accident" and therefore, not an "occurrence."
 {¶ 10} We agree with the First District Court of Appeals' rationale in Heile v. Herrmann (1999), 136 Ohio App.3d 351. InHeile, the court held that the insurance coverage at issue did not apply to the claims because the claims were for the occurrence of mere "business risks," which are a normal consequence of doing business that can and should be controlled by business management. See Heile, 136 Ohio App.3d at 353. As the First Appellate District pointed out, "policies such as the one here are not intended to insure * * * risks that are the normal, frequent, or predictable consequence of doing business[.]" (Quotations omitted). Id. We think that delays in construction appropriately fit within the definition of "business risks." Construction delays are normal, frequent and predictable.
 {¶ 11} The issue of whether delay in rectifying defective workmanship and the resulting damages constitute an occurrence is matter of first impression for this Court, nor has the Ohio Supreme Court addressed this issue. Appellant has cited the decision of the Second Appellate District in Indiana Ins. Co. v.Alloyd Insulation Co., 2nd Dist. No. 18979, 2002-Ohio-3916 for the proposition that consequential damages stemming from faulty work are "accidents" and thus constitute an "occurrence" under a CGL policy. Id. at ¶ 31. In reaching this conclusion, the court stated that "a commercial general liability policy does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident." (Quotations omitted). Id. at ¶ 29.
 {¶ 12} Stated differently, a CGL policy will not provide coverage if faulty workmanship is the accident, but will provide coverage if faulty workmanship causes the accident. Therefore, under the court's reasoning in Indiana Ins. Co., the only way that the Westfield CGL policy at issue here will provide coverage is if faulty workmanship caused the delays and those delays are considered an accident under the CGL policy.
 {¶ 13} The CGL policy does not define "accident." However, it is axiomatic that "where common words appear in a written instrument, they will be given their ordinary meaning unless `manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument.'" Felton v. Nationwide Mut. Fire Ins. Co.,163 Ohio App.3d 436, 2005-Ohio-4792 at ¶ 19, quoting Alexander v. BuckeyePipeline Co. (1978), 53 Ohio St.2d 241, 245-246. We conclude that delay does not fit within the ordinary meaning of the term "accident." Rather, the repair or replacement of faulty workmanship and the resulting delay is a business expense and not an insurable liability. See Indiana Ins. Co. at ¶ 29.
 {¶ 14} Furthermore, courts presume that the intent of the parties resides in the language of the contract. See Desantis v.Lenoci, 9th Dist. No. 04CA008621, 2005-Ohio-4661, at ¶ 10, citing Kelly v. Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. We find, based on the contract, that delay in completing the contract was never intended to be an insurable liability. This intent is illustrated by the exclusions contained in the contract. As discussed infra, the parties included exclusions to coverage based upon delay in performance to encompass the very situation currently before us.
 {¶ 15} With regard to the exclusions, and assuming arguendo that delay constitutes an occurrence, we conclude that Appellant's claim would still be barred by Exclusion m., Damage to Impaired Property Not Physically Injured. Exclusion m states in pertinent part that:
"`Property damage' to `impaired property' or property that has not been physically injured, arising out of:
"(1) * * *
"(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." (Emphasis added).
 {¶ 16} "Property damage" under the CGL policy refers to the "loss of use of tangible property that is not physically injured." "Impaired property" is defined as:
"[T]angible property * * * that cannot be used or less useful because:
"(a) * * *
"(b) You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by:
(1) The repair, replacement, adjustment or removal of "your product" or "your work;" or
(2) Your fulfilling the terms of the contract or agreement."
 {¶ 17} We agree with Appellee that Appellant's claims fall squarely within the parameters of Exclusion m. Appellant has claimed "property damage" in the form of loss of use of her buildings, none of which were physically injured. Appellant has claimed that the damage was done to "impaired property" in that the property was tangible and could not be used due to Coastal's failure to fulfill its contractual terms; but could be restored to use by Coastal repairing their work or fulfilling the terms of their contract.
 {¶ 18} Appellant has argued that Exclusion m is not applicable in the instant case because she has not claimed damages resulting from a breach of contract. Appellant has argued that her claims arise from Coastal's negligence in incurring a delay in rectifying faulty workmanship, which resulted in loss of use and value to Appellant's property. We find that this argument is simply window dressing clothing a breach of contract claim in terms of negligence. Coastal's delay, or in other words, its failure to perform, is a prototypical breach of contract. In fact, the record reflects that Appellant has conceded that her claim was based in breach of contract.[1] Therefore, we conclude that Exclusion m is applicable and precludes coverage.
 {¶ 19} Based on a careful review of the record, we find that there existed no genuine issue of material fact and that Appellee was entitled to judgment as a matter of law. We conclude that reasonable minds can come to but one conclusion and that conclusion is adverse to Appellant, that party being entitled to have the evidence construed most strongly in their favor.
 {¶ 20} Based on the foregoing, Appellant's assignment of error lacks merit.
III
 {¶ 21} Appellant's sole assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant, Stella Moga.
Exceptions.
Carr, J. Moore, J. concur.
[1] See Brief of Appellant, Statement of Facts No. 10; Answer and Counterclaim to Plaintiff's Complaint for Declaratory Judgment, Counterclaim No. 6.