**WESTFIELD INSURANCE COMPANY, Appellee,**

v.

**R.L. DIORIO CUSTOM HOMES, INC., Appellant, et al.**

[Cite as *Westfield Ins. Co. v. R.L. Diorio Custom Homes, Inc.*, 187 Ohio App.3d 377, 2010-Ohio-1007.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

No. CA2009–09–125.

Decided March 15, 2010.

378

Isaac, Brant, Ledman & Teetor, James H. Ledman, and Scyld D. Anderson, for appellee.

McNamee & McNamee, P.P.L., Michael P. McNamee, and Gregory B. O'Connor, for appellant, R.L. Diorio Custom Homes, Inc.

Powell, Judge.

{¶ 1} Defendant-appellant, R.L. Diorio Custom Homes, Inc., appeals the judgment of the Warren County Court of Common Pleas granting summary judgment in favor of plaintiff-appellee, Westfield Insurance Co.

{¶ 2} On January 9, 2008, David and Brenda Schumacher filed an underlying action against Diorio regarding Diorio's construction of their home and certain business practices. Among other allegations, the Schumachers alleged breach of contract and negligent misrepresentation on the basis that (1) Diorio failed to construct much of the home in a workmanlike manner, (2) Diorio failed to construct the home in a timely manner, and (3) Diorio misrepresented the time and expenses associated with the construction.[1]

{¶ 3} Pursuant to a commercial general liability ("CGL") policy held by Diorio, Westfield defended Diorio in the underlying action under a reservation of rights. The CGL coverage form, which sets forth the terms and conditions of CGL coverage, provides:

{¶ 4} "SECTION I—COVERAGES

{¶ 5} "COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

{¶ 6} "1. Insuring Agreement

{¶ 7} "a. We will pay those sums that the insured becomes legally obligated to pay as damages because of * * * 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend any 'suit' seeking damages for * * * 'property damage' to which this insurance does not apply. * * *

{¶ 8} " b. This insurance applies to * * * 'property damage' only if:

{¶ 9} "(1) The * * * 'property damage' is caused by an 'occurrence' * * *."

{¶ 10} The term "occurrence" is defined in Section V, paragraph 13, as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Property damage" is defined in paragraph 17 to include "[p]hysical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it." "Property damage" also includes "[l]oss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

{¶ 11} On December 26, 2008, Westfield filed a declaratory judgment action, seeking a declaration that it did not have a duty to defend the underlying action and that no coverage existed under the CGL policy. Westfield later moved for summary judgment to that effect. The trial court granted the motion and also

---

1. Though not at issue in this case, the Schumachers also alleged against Diorio a violation of Ohio's Consumer Sales Practices Act, conversion, slander of title, and fraud.

dismissed Diorio's counterclaim, which sought a declaratory judgment requiring Westfield to defend and indemnify it against the Schumachers' claims. In granting summary judgment against Diorio, the trial court stated that the Schumachers' complaint in the underlying case did not "assert damage as the result of an 'occurrence' as defined in the policy. Consequently, there is no duty to defend [Diorio] in that action." From that order, Diorio timely appeals, asserting two assignments of error.

{¶ 12} Assignment of Error No. 1:

{¶ 13} "The trial court erred in granting summary judgment to Westfield."

{¶ 14} Assignment of Error No. 2:

{¶ 15} "The trial court erred in dismissing Diorio's counterclaim."

{¶ 16} For ease of discussion, we will address both of Diorio's assignments of error concurrently. Diorio first argues the trial court erred in granting summary judgment in favor of Westfield because the insurer had a duty to defend Diorio in the underlying action. Diorio asserts that the Schumachers' complaint is ambiguous as to the damages sought and that the only damages specifically pleaded are consequential to construction delays. Thus, Diorio argues that the damages sought should be covered under the CGL policy.

{¶ 17} In its second assignment of error, Diorio argues that the trial court erred in dismissing its counterclaim against Westfield for "the same reasons the trial court erred" in granting summary judgment and finding that the claims in the underlying action could not even "potentially or arguably" give rise to coverage under the policy. As stated, Diorio, in its counterclaim, sought a declaration from the trial court that Westfield is obligated, under the policy, to defend Diorio against any and all claims contained in the Schumachers' complaint and indemnify Diorio if liability is determined in the underlying action.

{¶ 18} This court conducts a de novo review of a trial court's decision on summary judgment. *Burgess v. Tackas* (1998), 125 Ohio App.3d 294, 296, 708 N.E.2d 285. A court may grant summary judgment only when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence submitted that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); *Welco Indus., Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129.

{¶ 19} "An insurer's duty to defend is broader and distinct from its duty to indemnify. The scope of the allegations in the complaint against the insured determines whether an insurance company has a duty to defend the insured.

The insurer must defend the insured in an action when the allegations state a claim that potentially or arguably falls within the liability insurance coverage. However, an insurer need not defend any action or claims within the complaint when all the claims are clearly and indisputably outside the contracted coverage." (Citations omitted.) *Ohio Govt. Risk Mgt. Plan v. Harrison,* 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶ 19; *Paramount Parks, Inc. v. Admiral Ins. Co.,* Warren App. No. CA2007–05–066, 2008-Ohio-1351, 2008 WL 757533, ¶ 20.

{¶ 20} As described above, the Schumachers' complaint alleges that Diorio failed to construct their home in a workmanlike manner, failed to construct the home in a timely manner, and misrepresented the time and expenses relating to the construction of their home. The Schumachers further allege that as a result of Diorio's breach of contract and negligent misrepresentation, they have suffered damages in excess of $25,000.

{¶ 21} After an independent and thorough review of the record, we find that the allegations contained in the Schumachers' complaint failed to assert damages as the result of an "occurrence" as defined in the policy. A CGL policy like the one at issue does not insure against claims for defective or negligent workmanship or construction, because defective workmanship does not constitute an "accident." *Paramount Parks* at ¶ 25; *Heile v. Herrmann* (1999), 136 Ohio App.3d 351, 353, 736 N.E.2d 566. Therefore, claims for defective or negligent workmanship do not constitute an "occurrence" under the policy. Id. In addition, Diorio's alleged delay in rectifying any deficiencies and any resulting damages does not constitute an "occurrence" as defined in the policy. *Westfield Ins. Co. v. Coastal Group, Inc.,* Lorain App. No. 05CA008664, 2006-Ohio-153, 2006 WL 120041, at ¶ 13.

{¶ 22} The CGL policy at issue is not intended to protect Diorio "against every risk of operating a business." *Heile,* 136 Ohio App.3d at 353, 736 N.E.2d 566. This type of policy is intended to insure the risks of the insured causing damage to other persons and their property, but it is not intended to insure the insured's work itself. Id. Rather, the policies generally insure consequential risks that stem from the insured's work. Id. The claims for faulty workmanship and delays in construction appropriately fit within the definition of "business risks," as both are normal consequences of doing business that could have or should have been controlled by Diorio. Id.; *Coastal Group,* 2006-Ohio-153, 2006 WL 120041, at ¶ 10.

{¶ 23} We recognize, however, that some courts have concluded an insured's defective workmanship on a construction project constitutes an insurable "occurrence" under a CGL policy. *Erie Ins. Exchange v. Colony Dev. Corp.* (1999), 136 Ohio App.3d 406, 736 N.E.2d 941; *Indiana Ins. Co. v. Alloyd Insulation Co.,*

Montgomery App. No. 18979, 2002-Ohio-3916, 2002 WL 1770491; *Cincinnati Ins. Co. v. G.L.H. Inc.*, Erie App. No. E–07–053, 2008-Ohio-3853, 2008 WL 2940663. These courts have reasoned that allegations of negligence in constructing a building and breaching a duty to perform in a workmanlike manner reasonably fall within the policy's definition of an "accident," and therefore "occurrence," because negligent acts are not done with the intent or expectation of causing injury or damage.

{¶ 24} Assuming, arguendo, that delay, a failure to construct the home in a workmanlike manner, or misrepresentations of both constituted "occurrences" under the policy, we conclude that Westfield would still have no duty to defend or indemnify Diorio in the underlying action based upon the exclusions contained in the policy.

{¶ 25} In addition to the general statement of coverage set forth above, the policy at issue contains a number of exceptions. In particular, the policy provides:

{¶ 26} "2. Exclusions

{¶ 27} "This insurance does not apply to:

{¶ 28} "a. Expected or intended injury

{¶ 29} " * * * 'property damage' expected or intended from the standpoint of the insured. * * *

{¶ 30} "j. Damage to the property

{¶ 31} " 'Property damage' to: * * *

{¶ 32} "(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or

{¶ 33} "(6) That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it. * * *

{¶ 34} "Paragraph (6) of this exclusion does not apply to 'property damage' included in the products-completed operations hazard. * * *

{¶ 35} "m. Damage To Impaired Property Or Property Not Physically Injured

{¶ 36} " 'Property damage' to 'impaired property' or property that has not been physically injured, arising out of:

{¶ 37} "(1) A defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work;' or

{¶ 38} "(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

{¶ 39} "This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use."

{¶ 40} Additionally, the policy defines "your work" in paragraph 22 of the "Definitions" section as "[w]ork or operations performed by you or on your behalf" and "[m]aterials, parts or equipment furnished in connection with such work or operations" and as including "warranties, representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work'" and "[t]he providing of or failure to provide warnings or instructions."

{¶ 41} Exclusions 2.j.(5) and 2.j.(6) preclude coverage for the claims for breach of contract for faulty workmanship and any resulting property damage, and exclusion m. encompasses the Schumachers' claims for damages caused by delay or representations made by Diorio. See *Coastal Group*, 2006-Ohio-153, 2006 WL 120041, at ¶ 17; *Bosak v. H & R Mason Contrs., Inc.*, Cuyahoga App. No. 86237, 2005-Ohio-6732, 2005 WL 3475817 (exclusions in an insurance policy generally operate to ensure that most damage resulting from a contractor's own work is excluded from coverage because liability insurance should not be a warranty or performance bond for general contractors); *Acme Constr. Co., Inc. v. Continental Natl. Indemn. Co.*, Cuyahoga App. No. 81402, 2003-Ohio-434, 2003 WL 194879.

{¶ 42} Because the Schumachers failed to allege damages as a result of an "occurrence" as defined in Diorio's policy with Westfield, we find that the trial court did not err in holding that Westfield has neither a duty to defend nor a duty to indemnify Diorio in the underlying action and thus granting summary judgment in favor of Westfield. We also find the court did not err in dismissing Diorio's counterclaim against Westfield. Accordingly, both of Diorio's assignments of error are without merit.

Judgment affirmed.

YOUNG, P.J., and RINGLAND, J., concur.