[Cite as *Powell v. Warren Cty. Bd. of Commrs.*, 2020-Ohio-5570.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| RANDY POWELL, et al., | : | |
| Appellants, | : | CASE NO. CA2020-02-008 |
| | : | O P I N I O N |
| - vs - | | 12/7/2020 |
| | : | |
| BOARD OF COMMISSIONERS of WARREN COUNTY, et al., | : | |
| | : | |
| Appellees. | : | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 19 CV 92120

McNamee & McNamee, PLL, Michael B. McNamee, Gregory B. O'Connor, 2625 Commons Boulevard, Beavercreek, Ohio 45431, for appellants

David P. Fornshell, Warren County Prosecuting Attorney, Bruce A. McGary, Adam M. Nice, 520 Justice Drive, 2nd Floor, Lebanon, Ohio 45036, for appellee Board of County Commissioners

Robbins, Kelly, Patterson & Tucker, LPA, Robert M. Ernst, 7 West Seventh Street, Suite 1400, Cincinnati, Ohio 45202, for appellee Highland Development Partners, LLC

**RINGLAND, J.**

{¶1} Appellants, Randy and Victoria Powell, appeal the decision of the Warren County Court of Common Pleas granting summary judgment to appellees, the Warren County Board of Commissioners (the "Board"), Stephen Deger, Julia Schwartz, and

Highland Development Partners, LLC in a zoning dispute. The issue before this court is whether the Board approved a planned-unit development in violation of the county's zoning resolution. For the reasons discussed below, we hold that the Board's approval of the planned-unit development violated the county's zoning resolution.

{¶2} The applicable facts are not in dispute. At the time of the application, Deger and Schwartz were the owners of 70.39 acres of land in an unincorporated portion of Turtlecreek Township. They contracted with Highland Development Partners, LLC, to develop the land and apply to the Warren County Zoning Department to have it rezoned as a planned-unit development. The proposed planned-unit development would set aside 18.59 acres—around 26.4% of the total land in the development—as open space. However, 7.43 acres of that 18.59 acres was designated for use as a common sanitary sewer drip irrigation area. Additionally, the proposal set the net density of the development at 0.88 units per acre. The density for the original zone, before the planned-unit development change, was 0.5 units per acre. The proposal went through the appropriate application process. The county rural zoning commission provided several recommendations to the proposal. With those recommendations integrated into the proposal, the Board approved the planned-unit development in Resolution 19-0214.

{¶3} Appellants brought an action for declaratory judgment on the basis that the planned-unit development violated the county's zoning resolution because it did not comply with the open space or density requirements in the zoning resolution. Both appellants and the Board moved for summary judgment. The other appellees joined in the Board's motion for summary judgment and separately moved for dismissal. The trial court granted summary judgment for the Board, holding that the zoning resolution did not apply to the planned-unit development sub judice.

{¶4} Appellants now appeal raising one assignment of error for review:

{¶5} THE TRIAL COURT ERRED IN DENYING THE POWELLS' MOTION FOR SUMMARY JUDGMENT AND GRANTING THE [BOARD OF COUNTY COMMISSIONERS'] CROSS MOTION.

{¶6} In their sole assignment of error, appellants argue that the trial court erred when it entered summary judgment for the Board because the plain language of the zoning resolution provides that the planned-unit development regulations apply to all planned-unit developments. Appellants further argue that the Board does not have authority, pursuant to R.C. 303.022(B) to approve the planned-unit development because that provision is inapplicable in this instance.

{¶7} An appellate court conducts a de novo review of the trial court's decision to grant summary judgment. *Eastbrook Farms, Inc. v. City of Springboro*, 12th Dist. Warren No. CA2003-08-080, 2004-Ohio-1377, ¶ 14, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). To grant summary judgment, the moving party must demonstrate that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence and stipulations that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party. Civ. R. 56(C); *Westfield Ins. Co. v. R.L. Diorio Custom Homes, Inc.*, 187 Ohio App.3d 377, 2010-Ohio-1007, ¶ 18 (12th Dist.). The court must construe the evidence in favor of the nonmoving party. Civ.R. 56(C); *Drees Co. v. City of Mason*, 12th Dist. Warren No. CA2003-05-060, 2004-Ohio-3670, ¶ 9.

{¶8} Zoning regulations are a product of the exercise of governmental police power. *Am. Aggregates Corp. v. Warren Cty. Commrs.*, 39 Ohio App.3d 5, 6 (12th Dist.1987), *superseded by statute on other grounds as stated in Jurkiewicz v. Butler Cty. Bd. of Elections*, 85 Ohio App.3d 503, 505 (12th Dist.1993). A county does not have authority to regulate land use unless that authority has been provided by the General

Assembly. *Am. Aggregates Corp.* at 6-7. The General Assembly has delegated some of its zoning police power to counties pursuant to R.C. Chapter 303. In particular, R.C. 303.022 provides counties the authority to establish and modify planned-unit developments through its zoning resolution. As the basis for the county's zoning authority at issue, we will first address the parties' arguments concerning R.C. 303.022.

{¶9} The primary concern of statutory interpretation is legislative intent. *State v. Seawell*, 12th Dist. Warren No. CA2019-05-050, 2020-Ohio-155, ¶ 6. To determine legislative intent, this court will first look at the plain language of the statute. *Antoon v. Cleveland Clinic Found.*, 148 Ohio St.3d 483, 2016-Ohio-7432, ¶ 20. The statute will be applied as written if the language is unambiguous and definite. *State v. Pettus*, Slip Opinion No. 2020-Ohio-4836, ¶ 10, citing *Summerville v. City of Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, ¶ 18.

{¶10} R.C. 303.022 provides that:

> A county zoning resolution or amendment adopted in accordance with this chapter may establish or modify planned-unit developments. Planned-unit development regulations shall apply to property only at the election of the property owner and shall include standards to be used by the board of county commissioners or, if the board so chooses, by the county zoning commission, in determining whether to approve or disapprove any proposed development within a planned-unit development. The planned-unit development shall further the purpose of promoting the general public welfare, encouraging the efficient use of land and resources, promoting greater efficiency in providing public and utility services, and encouraging innovation in the planning and building of all types of development. Within a planned-unit development, the county zoning regulations, where applicable, subdivision regulations, and platting regulations need not be uniform, but may vary in order to accommodate unified development and to promote the public health, safety, and morals, and the other purposes of this section.
>
> Planned-unit developments may be included in the county zoning resolution under one of the following procedures:

{¶11} R.C. 303.022 then provides three separate methods in R.C. 303.022(A), (B), and (C) by which a county's board of commissioners may adopt planned-unit development regulations. As can be seen in the second paragraph of R.C. 303.022, for a county to establish or modify a planned-unit development, it must adopt in its zoning resolution the procedure or procedures provided in R.C. 303.022(A), (B), or (C). The plain language of the statute is unambiguous and definite.

{¶12} R.C. 303.022(A) permits a county board of commissioners to develop general planned-unit development regulations. These regulations do not automatically attach to any existing property, instead a property owner has to apply to the county to have the property rezoned as a planned-unit development pursuant to the regulations. On the other hand, R.C. 303.022(B) allows a board of commissioners to adopt ad hoc planned-unit developments. Property owners may apply to the board of commissioners to designate their property a planned-unit development and the standards that will apply to the planned-unit development will be set forth in the development proposal. The standards will apply only to that development. Finally, R.C. 303.022(C) authorizes a board of commissioners to adopt planned-unit development regulations and "amend the zoning map to rezone property as planned-unit developments." The property retains its previous zoning regulations until the property owner applies to the county to subject it to the planned-unit development regulations.

{¶13} The Board concedes that it adopted regulations for planned-unit developments in its zoning resolution specifically pursuant to R.C. 303.022(A) and (C). The county's zoning resolution is silent as to any approval method under R.C. 303.022(B) for ad hoc planned-unit developments. The Board argues, that by creating three types of planned-unit developments, as will be discussed below, it implicitly adopted the R.C. 303.022(B) procedure.

{¶14} Applying the plain language of R.C. 303.022, the Board's argument lacks merit. The zoning resolution adopted by the county does not implement the R.C. 303.022(B) method. Instead, the county included in its zoning resolution specific types of planned-unit developments; a detailed approval process, which requires compliance with the zoning resolution; and general and specific regulations for planned-unit developments. All of these factors show that the Board did not adopt the planned-unit development procedure authorized by R.C. 303.022(B). Consequently, the Board may not rely on R.C. 303.022(B) as an alternative process to the one adopted in the county's zoning resolution. We must now look at the zoning resolution adopted by the Board to determine whether its provisions apply to the planned-unit development sub judice.

{¶15} In interpreting zoning resolutions, the Ohio Supreme Court has explained that there are two principles that guide our consideration.

> The first of these principles states that zoning ordinances are to be construed in favor of the property owner because they are in derogation of the common law and deprive the property owner of uses to which the owner would otherwise be entitled. Thus, we have long held that restrictions imposed on the use of private property via ordinance, resolution, or statute must be strictly construed, and the scope of the restrictions cannot be extended to include limitations not clearly prescribed. In other words, we do not permit zoning "limitations by implication."
>
> Second, we have long held that when applying a zoning provision, a court must not view the provision in isolation; rather, its "meaning should be derived from a reading of the provision taken in the context of the entire ordinance."

(Internal citations omitted.) *Cleveland Clinic Found. v. Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, ¶ 34-35.

{¶16} The zoning resolution adopted by the Board, the Warren County Rural Zoning Code ("ZC"), consists of four separate articles divided into chapters and further divided into sections. The relevant provisions for planned-unit developments are found in Article II,

Chapter 5 of the zoning resolution. Before looking at the specific regulations, we observe the context of those regulations. In setting forth the Board's authority to create planned-unit developments, ZC 2.502 states

> **AUTHORITY:** The Board of County Commissioners (BOCC) may approve a rezoning request and development plan for a PUD in accordance with the procedures and standards specified in this Chapter and other regulations applicable to the district in which the subject property is located.

{¶17} In addition, ZC 2.506(A) provides that the Board shall consider compliance with the zoning resolution and compatibility with the purposes of the underlying zoning district as a factor in deciding to approve or deny the planned-unit development. Reading these two provisions together establishes that the zoning resolution provides the procedures and standards for planned-unit developments.

{¶18} The county's zoning resolution then sets forth three different types of planned-unit developments. The first type is an interstate highway overlay, which is also referred to as an "Interstate PUD." ZC 2.504.1. The other two alternatives—an "overlay district" and a "new base district"—are subclassifications of a "Standard PUD." ZC 2.504.2. Consequently, a "Standard PUD" could refer to either an overlay or a new base district.

{¶19} The Interstate PUD is an overlay that removes the base zone and replaces it with the planned-unit development designation subject to a property owner's application for the change. ZC 2.504.1. The "overlay district" is a planned-unit development that applies "regulations supplementary to the underlying zoning district if only marginal changes from the underlying zoning regulations are contemplated." ZC 2.504.2.(A). Finally, the "new base district" is a new zone that completely displaces the previous zoning regulations. ZC 2.504.2(B). It is undisputed that the planned-unit development sub judice qualifies as a "new base district."

{¶20} While ZC 2.504.2(B) provides that a "new base district" completely displaces

the previous zoning regulation, nothing in this section establishes that the planned-unit development shall not follow the remaining provisions in the zoning resolution or otherwise permits the planned-unit development proposal to supplant the chapter's standards.

{¶21} The zoning resolution then provides for certain standards to be implemented with a planned-unit development. Specifically, ZC 2.509 sets forth

> **PUD DEVELOPMENT STANDARDS:** The density, total floor area, and land coverage by buildings, within a PUD Overlay, shall not exceed the maximums allowed in the underlying zoning district by an amount greater than twenty percent (20%) except in accordance with Section 2.509.5(B). PUD projects granted relief from normal regulatory requirements of this chapter shall meet the following specific standards regarding density and intensity, uses, development size, design, open space, and landscaping.[1]

In considering this language, a court must give effect to the words used and not insert or delete words. *See Dundics v. Eric Petro. Corp.*, 155 Ohio St.3d 192, 2018-Ohio-3826, ¶ 7. The plain language used in this section makes a clear distinction between a "PUD Overlay" in the first sentence and the more general "PUD projects" in the second sentence. The zoning resolution does not define the term "PUD project." In the absence of a specific definition provided in the law for a word or phrase, words are to be given their common, ordinary, and accepted meaning. *State v. Black*, 142 Ohio St.3d 332, 2015-Ohio-513, ¶ 39. A "project" is defined as a plan, scheme, or design. *Collins English Dictionary* (12th Edition 2014), https://www.thefreedictionary.com/project (accessed October 28, 2020). By using the term "PUD project," the zoning resolution explicitly broadened the scope of the

---

1. There is a discrepancy between the section heading for ZC 2.509 in the record and the one found on the Warren County website. The website version of the zoning resolution shows the heading "PUD OVERLAY DEVELOPMENT STANDARDS." It is not clear whether the addition of the word "overlay" was an amendment after the application for the planned-unit development. Appellee has not addressed this difference in heading. The zoning regulations in effect at the time an applicant files for a zoning change control. *See Alesi v. Bd. of Cty. Commrs.*, 12th Dist. Warren Nos. CA2013-12-123, CA2013-12-124, CA2013-12-127, CA2013-12-128, CA2013-12-131, CA2013-12-132, 2014-Ohio-5192, ¶ 30. Consequently, we will use the version submitted to the trial court.

development standards. "PUD project" is a general description that encompasses all the types of planned-unit developments. Therefore, the definite and unambiguous language of ZC 2.509 sets forth that there is a specific restriction for "PUD Overlays," and that the subsequent subsections will provide other and additional standards for all planned-unit developments.

{¶22} These additional standards are provided in ZC 2.509.1 through 2.509.7. While arguing that these subsections only apply to planned-unit development "overlay" districts, the Board again essentially concedes that one of the subsections, ZC 2.509.2, applies to new base districts. The Board attempts to characterize this defect in their argument as the zoning resolution being "poorly organized." But that is not how a court interprets zoning resolutions, the zoning resolution is considered as a whole, not in isolation. *Cleveland Clinic Found.*, 2014-Ohio-4809 at ¶ 35.

{¶23} Turning to the relevant provisions in the zoning resolution, ZC 2.509.1 provides a standard for density and intensity within the planned-unit development. While ZC 2.509.1(B) sets forth a specific density requirement for an Interstate PUD, ZC 2.509.1(C) provides general density and intensity standards. ZC 2.509.1(C) provides that the Board may not vary density or intensity by more than 20%.

{¶24} Similarly, ZC 2.509.5 uses general terms to set forth "open space" requirements in the planned-unit developments and plainly prohibits land dedicated to a sewage disposal system from being included in the open space designation. There are no express limitations to a particular type of planned-unit development. Indeed, the only consideration for open space requirements in ZC 2.509.5 is whether the development concerns residential, mixed use, or nonresidential. "[W]here the statute is expressed in general language, it is to be applied to all cases coming within its terms." *Wachendorf v. Shaver*, 149 Ohio St. 231, 237 (1948).

{¶25} Consequently, the language in ZC 2.509.1(C) and 2.509.5 is definite and unambiguous. The standards in these sections apply to all types of planned-unit developments, except when limited to a particular type of planned-unit development as expressly provided within the section. The trial court erred when it held that the density and open space standards were inapplicable to the planned-unit development sub judice. Accordingly, we sustain appellants' sole assignment of error. The summary judgment granted in favor of the Board is hereby vacated and, finding that appellants are entitled to judgment as a matter of law, we hereby enter summary judgment on behalf of appellants according to App.R.12(B).

{¶26} Judgment reversed and judgment entered on behalf of appellants.

PIPER, J., concurs.

HENDRICKSON, P.J., concurs separately.

**HENDRICKSON, P.J., concurring separately.**

{¶27} I concur with the majority's opinion to reverse the judgment of the trial court because the zoning resolution adopted by the Warren County Board of County Commissioners ("BOCC") provides general requirements for all planned-unit developments and the BOCC failed to apply those requirements in the cause sub judice. Nevertheless, I write to further clarify a county's authority to create planned-unit developments pursuant to R.C. 303.022.

{¶28} The second paragraph of R.C. 303.022 provides that "[p]lanned-unit developments may be included in the county zoning resolution under one of the following procedures" and then sets forth three procedures in R.C. 303.022(A), (B), and (C). While the majority opinion rejected the BOCC's argument that it could rely on all three procedures outlined in R.C. 303.022 when it did not clearly adopt the procedure in R.C. 303.022(B), I

- 10 -

would hold that the phrase "under one of the following" strictly limits a county to a single planned-unit development procedure.

{¶29} As discussed in the majority opinion, the primary concern of statutory interpretation is legislative intent. That said, "[w]hen the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply the rules of statutory interpretation." *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553 (2000). By using the phrase "under one of the following," the General Assembly has plainly and unambiguously required a county to choose a single procedure to the exclusion of the others.

{¶30} The General Assembly has employed the phrase "under one of the following" at least 12 other times.[2] One of these instances is R.C. 519.021, which sets forth a township's authority to create planned-unit developments. Except where the language has been changed to identify the political subdivision of township, instead of a county, this statute is substantially the same as R.C. 303.022. Therefore, it presents the same issue as in R.C. 303.022

{¶31} In the other times the phrase "under one of the following" was employed, the phrase is used to limit applicability of the provision and the stated alternatives provided are inherently exclusive to each other. In R.C. 742.3711(A), for example, the General Assembly employed the phrase "under one of the following" to limit the options available to members of the police and fire pension fund should the member elect to receive their retirement allowance as an "actuarial equivalent" payment to allow for a payment to a designated beneficiary or beneficiaries. In R.C. 742.3711(A), there are then four options exclusive to each other available for the member to choose. *See also* R.C. 3307.60(A) (similarly

---

2. See R.C. 519.021, 742.3711(A), 1111.13(A)(2), 1751.52(B), 1751.691(B), 2953.08(A)(1), 3307.60(A), 3701.14(B), 3923.851(B), 5164.091(B)(1), 5505.162(A)(2), and 5748.01(A).

employs the phrase "under one of the following" for various alternative payment options to members of the state teachers' retirement system).

{¶32} On the other hand, the General Assembly has employed the phrase "under any of the following" around 67 times and the variant phrase "under any one of the following" an additional 31 times.[3] The phrase "under any of the following" is a more expansive and inclusive designation. It allows one or multiple alternatives to apply simultaneously. By employing the phrase "under any of the following" the General Assembly has shown there is a distinction to be made.

{¶33} If the General Assembly had intended a county to be able to use all of the three procedures provided in R.C. 303.022 it could have provided for such a method by using the phrase "under any of the following" or even "under all of the following." Instead, the General Assembly instructed the county to include planned-unit developments in the county zoning resolution "under one of the following procedures" set forth in R.C. 303.022(A) thru (C). As such, the county was limited to a single planned-unit development procedure. I therefore concur with the majority in reversing the trial court's decision.

---

3. Without reproducing the entire list of relevant statutes, some examples for "under any of the following" include R.C. 2151.34(D)(2)(a), 1303.32(C), 2152.18(E), 2901.23(A), 3107.02(B), 3111.03(A), and 4582.31(A)(18)(c).